### STUART v. PALM BEACH GARDENS HOSPITAL, et al.

No. MLMC 78 13 CA(L) 01.

Circuit Court, Palm Beach County.

October 3, 1978.

Theodore Babbitt, West Palm Beach, for the plaintiff/respondent.

Florence B. Snyder, Boca Raton, for the petitioner/movant.

LEWIS KAPNER, Circuit Judge.

This matter is presented upon a motion to quash filed by John Lopinot, a reporter for the Palm Beach Post. Although there are technical problems regarding the exact procedures to be followed in a matter such as this, the parties have stipulated that the court could go directly to the merits of this issue to determine whether petitioner's claim of First Amendment privilege should prevail over respondent's claim to a fair trial.

It is alleged in the case in chief that respondent (plaintiff), a 37-year-old woman, as a result of open heart surgery categorized as "minor," was the victim of malpractice. Specifically, she

allegedly remained in a coma for several days, was confined to a nursing home for several months, she now suffers from permanent brain damage, and she is practically blind, all as a result of said surgery. There is a dispute in the testimony of the participants concerning several aspects of the operation, one aspect being whether a bubble of air came through the heart-lung machine into the patient's body.

John Lopinot, the witness in question, was at the time a reporter-photographer for the Palm Beach Post. He was present at the scene in connection with a news feature story on open heart surgery. His presence was the result of a cooperative decision between the participants (the parties to this law suit) and the witness. He took between 400 and 700 photographs of the operation and it is this operation that is the incident which gave rise to the instant medical mediation panel proceeding. One of the participants, respondent (plaintiff), seeks to compel the witness to produce these photographs for possible use as evidence in the case. The other participants have expressed no position on this matter.

Petitioner claims that the subpoena should be quashed. He contends that requiring him to produce these photographs would have a "chilling effect" upon his ability to obtain and report news of this kind and, further, that respondent has failed to show any compelling need for such evidence.

Petitioner's motion must fail on both contentions — he has failed to demonstrate that honoring this subpoena would have a chilling effect upon his exercise of his First Amendment rights in this kind of situation. Further, even assuming that such a chilling effect has been established, respondent has carried her burden of showing a compelling need for these items to insure a fair trial.

There are several points that should be discussed with respect to petitioner's position —

## I

1) It has been conceded by petitioner that the First Amendment right to resist subpoenas of unpublished relevant evidence is not absolute. Petitioner initially gave the example of a reporter photographing a murder as one in which a reporter would be compelled to testify. He later expanded this to include other matters of serious magnitude. In such serious cases, the competing rights of a fair trial and to freedom of speech must be balanced. This case, involving allegations that malpractice caused severe injury is such a case of serious magnitude.

2) This is not a case where confidentiality or nonpublication was ever offered or even discussed; on the contrary, disclosure was the very purpose of the journalist's presence. The evidence

does not establish that submission to court subpoena in a case such as this would deter a news agency and its news gathering function. This is not a case of a reporter's need to protect confidential sources from disclosure to a court or the public. A "chilling effect" has not been established.

3) This is not a case where a government or private entity sits back, lets a news agency investigate a matter, and then attempts to appropriate the results of that investigation. The reporter was simply a witness to an event. He is asked to testify as to his observation of that event — indeed, he is asked simply to produce and verify photographs of that event — and he is not asked to testify as to any investigation he may have conducted after the event occurred.

4) The distinction suggested by petitioner between published and unpublished material has no application to this case—A) Nondisclosure was not a factor in the taking of these photographs; B) Forced disclosure of these kinds of photographs involves no observable or objective deterrent to news gathering as in cases where confidential sources need to be protected. Again, confidentiality was not a factor. The evidence does not support the proposition that the possibility that submission to court subpoenas would deter people from cooperating in news stories of this kind.

5) Generally speaking, the privilege asserted by the news media is not only personal but also derivative, that is to say, it is advanced on behalf of those more directly affected by disclosure. In this case, no oppostion to disclosure has been expressed by any of the participants other than the news reporter; on the contrary, the only expression on this point has been by the respondent who desires disclosure.

6) No evidence was shown regarding who actually has the legal right to control the decision to publish or not to publish, but, apparently, the article was a cooperative effort, one that would not have been undertaken without the full consent and cooperation of all involved. Are all the participants, then, to be considered as "equal partners" to this venture? If petitioner attempted to publish or produce these photographs and the other participants sought to prevent him from doing so, he clearly would have the right, under the First Amendment, to do so. Is the situation really different with respect to First Amendment considerations, where, as here, a participant, a "partner" in the news story, seeks that same right? The answer is not clear, but in the absence of some agreement to the contrary it does not seem appropriate to rule that the person who has physical custody of photographs has First Amendment rights but those persons equally responsible for the production of those photographs would not.

## II

Even if we assume, arguendo, that petitioner has established that a chilling effect would result in submission to court subpoena, respondent has shown a greater compelling fair trial right. True, respondent can not know absolutely whether the photographs in question would be relevant to this case; but, of course, it would be impossible to know that unless she saw them. What *is* known, though, is that the petitioner took over 400 photographs of the incident claimed to have negligently caused severe injuries to the respondent and that no other item of evidence has a potential of coming close to duplicating what might be shown on those photographs.

In summation, there is no question but that persons are granted broad First Amendment protection relating to their news gathering efforts, but in this case respondent's need for the photographs in question far outweigh any possible burden or chilling effect placed upon petitioner.

Accordingly, it is ordered that petitioner's motion to quash is denied.